O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSENE DAVENPORT,                    ) | No. ED CV13-517-JGB (AS) |
|                                      ) | |
|                   Plaintiff,         ) | **ORDER GRANTING MOTION TO** |
|          v.                          ) | |
|                                      ) | **DISMISS FOR LACK OF SUBJECT** |
| GUILLERMO GARCIA, Warden,            ) | |
|                                      ) | **MATTER JURISDICTION** |
|                   Defendant.         ) | |
| _____) | |

**I.**

**INTRODUCTION**

   On May 21, 2013, Plaintiff Rosene Davenport ("Plaintiff"), a *pro se* litigant who was previously incarcerated at the California Institution for Women ("CIW"), filed a First Amended Complaint ("FAC"), pursuant to 42 U.S.C. § 1983 (Docket Entry No. 15). The FAC seeks declaratory and injunctive relief, and brings suit against the following CIW officials in their official capacities: (1) K. Hughes, Acting Warden; (2) Robert Kettle, Associate Warden; (3) J. Ellis, Mailroom Supervisor; (4) D. Borders, Chief Deputy Warden;

1

(5) D. Glucksman, Correctional Captain; and (6) Doe Defendants One through Five.[1]  (See FAC 3-6, 10-11, 15-16.)  On September 5, 2013, Defendants filed a Motion to Dismiss the FAC, asserting (*inter alia*) that Plaintiff failed to state a claim upon which relief could be granted (Docket Entry No. 30).  On June 9, 2014, Defendants filed a Motion for Summary Judgment, averring that Plaintiff had failed to exhaust administrative remedies prior to filing suit (Docket Entry No. 39).  On August 12, 2014, the Magistrate Judge assigned to this case issued a Report and Recommendation that addressed those Motions (Docket Entry Nos. 41, 42).

On August 27, 2014, Plaintiff filed a "Notice of Change of Address[,]" which informed the Court that she had been moved to the Female Community Reentry Facility in McFarland, California ("FCRF")

---

[1] With the exception of the fictitious parties, the Court shall refer to these persons collectively as "Defendants."

Furthermore, the Motion for Summary Judgment discussed *infra* clarified that Plaintiff erroneously sued Defendants Ellis and Glucksman under the names "Janet Elhi" and "D. Gluckman[,]" respectively. (See Mot. Summ. J. 1 & nn.1-2, Docket Entry No. 39.)

Moreover, the FAC names Warden Tamara Kabban-Miller and Chief Deputy Warden M. Martel as Defendants. (See FAC 3-4, 10.) However, the Motion to Dismiss for Lack of Subject-Matter Jurisdiction mentioned later in this Part ("Rule 12(b)(1) Motion") points out that: (1) K. Hughes is Tamara Kabban-Miller's successor, and (2) D. Borders is M. Martel's successor. (See Rule 12(b)(1) Motion 1 nn.1-2; Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.").)

Additionally, all citations to filings in this case refer to the pagination provided by the Court's electronic docket.

(Docket Entry No. 44).  On September 2, 2014, Defendants filed a Rule 12(b)(1) Motion, asserting that Plaintiff's transfer caused the FAC's claims to become moot (Docket Entry No. 45).  On September 11, 2014, the Court ordered Plaintiff to file an Opposition to the Rule 12(b)(1) Motion no later than October 14, 2014 (Docket Entry No. 47).  To date, Plaintiff has not filed such an Opposition.[2]  Having carefully considered the matter, the Court GRANTS Defendants' Rule 12(b)(1) Motion, and DISMISSES this action without prejudice for lack of subject-matter jurisdiction.

## II.

### ALLEGATIONS OF THE FIRST AMENDED COMPLAINT[3]

From January 1, 2012, to the date on which Plaintiff filed the FAC, CIW officials violated Plaintiff's First and Fourteenth Amendment rights by improperly "deliver[ing] and processing . . . incoming and outgoing mail."  (See FAC 3, 9, 16.)  In particular, "Plaintiff [had] . . . receiv[ed] her mail at least two to four weeks past the postmark date for years at [CIW]."  (See id. at 11.)  For instance, "[i]n February of 2013, Plaintiff received letters postmarked from December 2012."  (See id.)  Additionally, "[i]n March 2013, Plaintiff received legal mail delivered to her as 'regular' mail that had been opened and read prior to delivery to [her]."  (See

---

[2] On September 4, 2014 — before the Court ordered Plaintiff to file an Opposition — she attempted to file a letter that was rejected pursuant to Local Civil Rule 83-2.5 ("Letter") (Docket Entry Nos. 46, 46-1).  As discussed infra note 8, even if the Letter was properly before the Court, it would not change the result.

[3] The following is a summary of the FAC's allegations.

id.)  Moreover, at some unspecified point "[i]n the past, Plaintiff . . . missed two court dates involving child custody matters due to the late delivery of legal mail."  (See id.)

The delays in delivery and the improper opening of "legal" mail were caused by CIW's policy of "refusing and failing to fill the mailroom positions adequately" ("inadequate staffing policy").  (See id. at 13–14.)  The policy was implemented to "'reserve' these positions in the event [that] staff are demoted, temporarily assigned to medical 'light duty,' or have arrived from a transfer.'"  (See id. at 14.)  "In addition, . . . in the event the parole agent workforce in the community is downsized, these agents [would] still [be able to work] in CIW's prison mailroom."  (See id.)  The inadequate staffing policy violates Plaintiff's "First Amendment right of speech and communication and Fourteenth [A]mendment right of due process of law."  (See id.)

Furthermore, "CIW has [an] unofficial/unwritten 'policy' that requires prisoners to use a 'homemade' (by CIW prison) 'proof of service' form as an external wrapper to the prisoner's outgoing legal and/or confidential mail" ("proof of service policy").  (See id. at 11.)  "[P]laintiff and other prisoners have been told by [mailroom] staff that their confidential mail *will not be logged in the staff log* (contemporaneous to the actual mailing) because the [proof of service policy] . . . is intended to replace the contemporaneous staff logging procedure."  (See id. at 12 (emphasis added).)  If prisoners do not utilize the proof of service procedure, "they do so at the risk of custody staff refusing to process their outgoing

legal/confidential mail 'confidentially.'"   (See id.)   The proof of service policy violates Plaintiff's "[F]irst [A]mendment right to access the courts" and her "[F]irst [A]mendment right to confidential communications with authorized persons."[4]   (See id. at 14-15.)

To remedy these constitutional violations, Plaintiff seeks declaratory and injunctive relief from the named Defendants (including the Doe Defendants) in their official capacities.   (See id. at 10-11, 15-16.)   Plaintiff also requests "such other relief as may be appropriate and to which [P]laintiff appears to be entitled."[5] (See id. at 16.)

### III.

### DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) permits parties to move to dismiss actions for lack of subject-matter jurisdiction.[6] See Fed. R. Civ. P. 12(b)(1).   There are two forms Rule 12(b)(1)

---

[4] Later in the FAC, Plaintiff requests a declaration that the proof of service policy violates her "[F]irst [A]mendement right to confidential communications[] and [her] *[F]ourteenth [A]mendment right to due process of law*." (See FAC 15 (emphasis added).)

[5] There is no indication that Plaintiff seeks any form of retrospective relief. (See FAC 1-66.)

[6] The instant Rule 12(b)(1) Motion constitutes Defendants' second motion to dismiss. See supra Part I. Although Federal Rule of Civil Procedure 12(g)(2) ordinarily prohibits parties from filing successive motions to dismiss, the mootness defense discussed in this Part was not "available to [Defendants]" when they filed their first motion. See Fed. R. Civ. P. 12(g)(2). Furthermore, Federal Rule of Civil Procedure 12(h)(3) provides that, "[i]f the court determines *at any time* that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

motions: (1) facial motions, and (2) factual motions.  See Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039–40 n.2 (9th Cir. 2003).  In a facial attack, the propriety of jurisdiction is determined based on solely the allegations of the complaint.  See id.  On the other hand, in a factual challenge, once the moving party "present[s] affidavits and other evidence[,] . . . the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  See id.

Furthermore, a federal court may be deprived of subject matter jurisdiction if a case becomes "moot."  See In re Burrell, 415 F.3d 994, 998–99 (9th Cir. 2005).  "A case is moot if the issues presented are no longer live and there fails to be a 'case or controversy' under Article III of the Constitution."  See id. at 998.  Put differently, a case becomes moot if at any point after the action is filed, the plaintiff "lack[s] a legally cognizable interest in the outcome."  See McQuillion v. Schwarzenegger, 369 F.3d 1091, 1095 (9th Cir. 2004) (quoting Porter v. Jones, 319 F.3d 483, 489 (9th Cir. 2003)) (internal quotation marks omitted).

Here, Defendants advance undisputed evidence demonstrating that after Plaintiff filed the FAC, she was transferred to FCRF. Specifically, Defendants submit the declaration of R. Moore, a Litigation Coordinator at CIW, which asserts that California Department of Corrections and Rehabilitation ("CDCR") records indicate that Plaintiff was transferred from CIW to FCRF on August 5,

2014.[7]   (<u>See</u> Moore Decl. ¶¶ 1-5, Docket Entry No. 45-1.)   Defendants argue that, because Plaintiff is no longer incarcerated at CIW, she lacks a "cognizable legal interest" in obtaining prospective relief relating to the inadequate staffing and proof of service policies. (<u>See</u> Rule 12(b)(1) Motion 10-12.)

"An inmate's release from prison while his [or her] claims are pending generally will moot any claims for injunctive relief relating to the prison's policies[,]" <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1368 (9th Cir. 1995), and that general rule also applies to claims for declaratory relief because a prisoner's removal from the facility signifies that "he [or she] is no longer subject to the prison conditions or policies he [or she] challenges." <u>Alvarez v. Hill</u>, 667 F.3d 1061, 1064 (9th Cir. 2012).   Thus, because Plaintiff is no longer confined at CIW, she bears the burden of demonstrating that she nonetheless retains a "legally cognizable interest" in challenging CIW's mailroom policies.   <u>See</u> <u>McQuillion</u>, 369 F.3d at 1095 (quoting <u>Porter</u>, 319 F.3d at 489); <u>Savage</u>, 343 F.3d at 1039-40 n.2.   In lieu of an Opposition to the Rule 12(b)(1) Motion, the Court concludes that Plaintiff has not shown that she possesses such an interest.[8]

---

[7] The Notice of Change of Address confirms that Plaintiff was transferred to FCRF at some point after she filed the FAC, although the document does not explicitly provide the date of the transfer. (<u>See</u> Notice of Change of Address 1.)   Furthermore, the Letter that Plaintiff attempted to file on September 4, 2014, claims that she was transferred from CIW to FCRF on August 4, 2014.   (<u>See</u> Letter 1-2.) Accordingly, it is undisputed that Plaintiff was removed from CIW on either August 4, 2014, or August 5, 2014.

[8] In Plaintiff's Letter, she asserts that after she was transferred to FCRF, CIW's mailroom policies continued to affect her.

7

"There are, however, four major exceptions to the mootness doctrine, for (1) collateral legal consequences; (2) wrongs capable of repetition but evading review; (3) voluntary cessation; and (4) class actions where the named party ceases to represent the class." Burrell, 415 F.3d at 998.  The record does not show that the inadequate staffing and proof of service policies will have any adverse legal consequences on Plaintiff.   Furthermore, Defendants have not voluntarily ceased to implement the inadequate staffing and proof of service policies; instead, CDCR has merely transferred Plaintiff to a different institution.  (See Moore Decl. ¶¶ 1-5.) Moreover, although the FAC asserts that other CIW inmates have been subjected to these purportedly unlawful mailroom policies, Plaintiff

(See Letter 1-4.)  In particular, she complains that as of August 27, 2014, CIW had failed to forward a package to her, even though it arrived at CIW on July 30, 2014.  (See id. at 1-2, 4.)  She also asserts that CIW officials improperly opened legal mail that had been rerouted from CIW to FCRF.  (See id. at 3.)

Even if these contentions were properly before the Court, they would fail to show that Plaintiff's "personal interest . . . [has] continue[d] *throughout [the] existence [of the litigation]*."  See Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003) (quoting Cook Inlet Treaty Tribes v. Shalala, 166 F.3d 986, 989 (9th Cir. 1999)) (internal quotation marks omitted).  First, Plaintiff fails to show that — *as of the date of this Order* — CIW officials have still not forwarded the package to her.  (See Letter 1-4.)  In fact, the delays discussed in the FAC appear to be no longer than three months in duration.  (See, e.g., FAC 11 (discussing three month delay); id. at 22, 33 (fellow prisoner's complaint that she had not received a package two months after it had been delivered to CIW).)   Second, there is no indication that, now that Plaintiff's transfer to FCRF is presumably complete, CIW officials have delayed or opened any other mail belonging to her.  (See Letter 1-4.)  In sum, the supposed lingering effects caused by CIW's mail policies appear to be transitory (*i.e.*, they relate to the temporary rerouting of mail from CIW).  Accordingly, Plaintiff does not establish that "[an] actual or live controversy exists."  See Foster, 347 F.3d at 745 (quoting Cook Inlet Treaty Tribes, 166 F.3d at 989).

8

has not initiated a class action on behalf of those inmates. (See FAC 1-2.)   Therefore, Plaintiff may avoid dismissal on mootness grounds only if the "wrongs capable of repetition but evading review" exception applies. See Burrell, 415 F.3d at 998.

"The mootness exception for claims that are capable of repetition, yet evade review, 'is limited to extraordinary cases in which (1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff will be subjected to the same action again.'"   See Alvarez, 667 F.3d at 1064 (quoting C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 983 (9th Cir. 2011)). In the instant case, there is no evidence suggesting that the CIW policies at issue were implemented for such a short period of time that their constitutionality could not be fully litigated; "rather, Plaintiff alleges that 'for years' she received her mail in an untimely fashion."   (Rule 12(b)(1) Motion (quoting FAC 11).) Moreover, nothing in the record indicates that there is a "reasonable expectation" that Plaintiff will return to CIW.[9]   See Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (concluding

---

[9]   In certain limited circumstances, unlawful behavior may be "capable of repetition, yet evad[e] review" even if there is no reasonable expectation that *the particular plaintiff* will be subjected to that conduct in the future. See, e.g., United States v. Howard, 480 F.3d 1005, 1008-11 (9th Cir. 2007) (holding that this exception to the mootness doctrine applied to challenges to a court policy requiring criminal defendants to be shackled during their initial appearances).   However, that exception applies only when "other [persons] would generally be unable to litigate their . . . claims to completion[.]"   See Alvarez, 667 F.3d at 1065.   Here, "nothing in the record . . . suggest[s]" that other CIW inmates are in any way precluded from challenging these mailroom policies.   See id.

9

that an inmate's challenges to his conditions of confinement at a particular prison were moot because, after he had been transferred to another institution, he failed to establish a "reasonable expectation of returning [to the first prison]"). Therefore, this exception to the mootness doctrine does not apply. Accordingly, the Court lacks subject-matter jurisdiction over this action.

**IV.**

**ORDER**

For the foregoing reasons, the Court rules that: (1) Defendants' Rule 12(b)(1) Motion is GRANTED, and (2) this action is DISMISSED without prejudice.

IT IS SO ORDERED.

Dated: November 30, 2014

_____
JESUS G. BERNAL
UNITED STATES DISTRICT JUDGE

10